trict court ought not to be disturbed. An entry may be prepared giving judgment in favor of the libellants for the amount of the decree below, and interest at 6 per cent. on the amount. in the aggregate, of all the different items of damage allowed by the district court, exclusive of the interest allowed and put into the decree. This amount I make $14,026.92. It is, however, subject to correction in case any error shall be discovered.

The decree will be for: (1) Decree below, $15,904.98. (2) Interest on $14,026.92 from June 11, 1877. to date of decree. (3) Costs in the district court.

As both parties have appealed, and the decree of the district court has been sustained, the costs in this court will be divided.

[NOTE. The libellants subsequently moved for a summary judgment against the sureties upon the appeal bond, which motion was denied, as having been made prematurely. Case No. 10,181. From the decree of this court affirming Case No. 10,179, an appeal was taken to the supreme court, where the decree was affirmed. 106 U. S. 13, 1 Sup. Ct. 90.]

═══════

## Case No. 17,354.

### WEEKS v. The NEW ORLEANS.

[See Case No. 10,181.]

═══════

WEEKS (THOMAS v.). See Case No. 13,-914.

═══════

## Case No. 17,355.

### The W. E. GLADWISH.

[17 Blatchf. 77.] 1

Circuit Court, S. D. New York. Aug. 28, 1879.

TOWAGE—NEGLIGENCE—LOSS OF CARGO—BURDEN OF PROOF — ICE — EXCESSIVE SPEED—WEIGHT OF TESTIMONY.

1. A person who ships cargo by a barge which he knows must be towed to her place of destination, is bound by the terms of towage which the barge agrees on with the tug which the barge procures to tow her.

2. If the barge is sunk and the cargo is lost, by contact with ice, while the barge is being towed by the tug. the owner of the cargo must show negligence on the part of the tug, in order to recover against it for such loss.

[Cited in The E. A. Packer, 22 Fed. 670.]

3. It was held not to be negligence in the tug to keep on. after reaching ice. instead of lying by, or making a harbor: that the towing hawser was not too long: that the speed was not too great: that nothing could have been done by the tug to avoid the danger, when the obstruction which actually caused the loss was seen; and that the barge and the vessels in the tow with her were not improperly arranged.

4. To make the tug liable for keeping on, it must appear that the error was one which a careful and prudent navigator, surrounded by like circumstances, would not have made.

[Cited in The James P. Donaldson. 19 Fed. 266; The E. A. Packer. 22 Fed. 671; The Allie & Evie, 24 Fed. 749; The Frederick E. Ives. 25 Fed. 450: The Wilhelm. 47 Fed. 93. Approved in The Battler, 62 Fed. 614.]

1 [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

5. The judgment of witnesses as to speed, formed long after the event, and not based upon anything which specially attracted attention at the time, is rarely to be depended upon.

This was an appeal by the libellant from a decree of the district court, in a suit in rem, in admiralty, dismissing the libel. [Case unreported.] This court found the following facts: "The Eastern Transportation Line, having its office in the city of New York, was engaged in the business of towing boats and vessels for hire, between New York and ports on Long Island Sound, and elsewhere. It was the owner of various tug boats, employed in its business, and. among others, the W E. Gladwish, the F. B. Thurber and the Francis King. The A. W. Humphreys was a barge, or canal boat, owned by her master, James McKeag, and engaged in the business of transporting goods by water, for hire. She had no motive power of her own, but was towed from place to place by tugs employed for that purpose, as occasion required, by her owner. who was an experienced boatman. He had often been towed by this line. At some time before March 8th, 1875, the barge had been towed by one of the tugs of the line from New York to New Haven, under a contract to take her to New Haven loaded. and back light, for fifty dollars.' She had the privilege of bringing back a load, if she chose, and, in that case, was to pay fifteen cents additional per ton for her load. No particular time was specified for her return, but she could come back at any time she was ready and the Line had a tug at New Haven that could take her. She staid at New Haven about four weeks, and, while there, took on board 360 pairs of car wheels, weighing 160 tons, belonging to the libellant, which she agreed to carry to Elizabethport, New Jersey, and there deliver to the Central Railroad Company of New Jersey, 'dangers of the seas excepted,' the consignors paying freight. A bill of lading in the usual form, bearing date February 27th, 1875, was signed by the master and owner. The tug Francis King arrived in New Haven, from New York, with a tow, on the morning of the 8th of March, 1875. She had been detained a long time on her voyage by the ice. which was found very thick west of Norwalk. The King started from New Haven. on her return voyage to New York, in the afternoon of the day she arrived. with a tow consisting of the Humphreys and ten canal boats. The Humphreys only had a load. All the other boats were light. The capacity of the Humphreys was about three hundred tons, but she had on board only the car wheels. She was taken in the tow at the express request of her captain and owner. he selecting that time to go back. under his original contract. When he made his request, he well understood that there was ice in the Sound, and that the King had with much difficulty made her way through it from New York. He took the line from the tug, when the tow was made up. with a full knowledge that he might. and probably would, encounter difficulties from the same cause, on